**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| JOSEPH W. FARMER, | : | |
| | : | Civil Action No. 16-8657(RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MARK A. KIRBY, | : | |
| | : | |
| Respondent. | : | |
| | : | |

This matter comes before the Court on Petitioner Joseph W. Farmer's ("Farmer") Petition For Writ of Habeas Corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1.) Farmer is an inmate incarcerated in the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton") who challenges the calculation of his jail credit upon parole revocation and seeks immediate release. (Id.) Respondent filed an Answer, opposing habeas relief. (Answer, ECF No. 4.) Petitioner filed a reply. (Reply, ECF No. 5.) For the reasons discussed below, the Court orders supplemental briefing and defers final ruling.

I.    BACKGROUND

On March 31, 1977, Farmer was convicted by a general court-martial of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920, and sentenced to thirteen years

confinement. (Decl. of Adam Escobedo ("Escobedo Decl."), ECF No. 4-1, ¶9.a; General Court-Martial Order Number 14, Ex. D.) Farmer began serving his sentence at the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas. (Parole Certificate and Agreement, Escobedo Decl., Ex. F.) Farmer was granted parole and released from confinement on August 14, 1980. (Id.) At that time, he had an unexpired term of confinement of 3,344 days. (Escobedo Decl. ¶9.b.)

While he was on parole, on December 11, 1981, Farmer was arrested by Philadelphia County, Pennsylvania Police for allegations of attempted murder, rape, aggravated assault, unlawful restraint, recklessly endangering another person, and simple assault. (Dec. 22, 1981 Letter, Escobedo Decl., Ex. G.) Therefore, Farmer's parole was suspended on December 15, 1981. (Id.) The Army placed a detainer on Farmer so he would be returned to military control to serve the remainder of his military sentence. (Military Detainer, Escobedo Decl., Ex. I.)

On May 10, 1982, Farmer was convicted in the Philadelphia County Court of Common Pleas of simple assault, aggravated assault, unlawful restraint and rape. (Jan. 27, 1983 Letter, Escobedo Decl., Ex. J.) On January 24, 1983, he was sentenced to 13.5-35 years in confinement. (Id.) The Army revoked Farmer's parole on March 14, 1985. (Letter, Escobedo Decl., Ex. H.) The Army's detainer remained

in place pending completion of Farmer's civilian sentence in Pennsylvania. (Escobedo Decl., ¶9.d.)

Farmer was released from civilian confinement on December 16, 2013, and taken into military control. (Escobedo Decl., ¶9.e.) He was designated to serve the remainder of his sentence as a military parole violator at a federal correctional institution in the custody of the Bureau of Prisons. (Escobedo Decl., ¶9.e; Declaration of Robert C. Jennings ("Jennings Decl.") ECF No. 4-4., ¶4.) In accordance with BOP Program Statement 5110.16,[1]

---

[1] BOP Program Statement 5110.16 (2), (3) and (4) provides:

2. ACCEPTANCE AND DESIGNATION

Referrals of military inmates for acceptance into Bureau custody are made to the Designation and Computation Center (DSCC) Team responsible for the Military Court of Jurisdiction (COJ)

3. TREATMENT AND DISCIPLINE

Military inmates transferred to Bureau custody are subject to the same treatment and discipline as other Bureau inmates (Title 10 U.S.C. 858).

4. SENTENCE COMPUTATION

Military sentence computations are provided by the Records Office, U.S. Army Disciplinary Barracks, Fort Leavenworth, Kansas. The DSCC must accept the sentence computation provided by military authorities, and refer suspected errors, or challenges to the sentence computation by the inmate, to the Military Records Office for resolution.

Farmer's sentence computation was provided by the Records Office, U.S. Army Disciplinary Barracks, in Fort Leavenworth, Kansas. (Jennings Decl., ¶5.)

Before his return to military control, Farmer's remaining military sentence was recalculated pursuant to Army Regulation 633-30. (Nov. 14, 2013 ACIS Sentence Computation Report, Escobedo Decl., Ex. B.) Farmer's sentence has been recalculated annually since his return to military control. (Escobedo Decl., ¶8.) Based on the most recent calculation, Farmer's maximum release date is on February 10, 2023, and his minimum release date is on August 21, 2019. (Nov. 30, 2016 ACIS Sentence Computation Report, Escobedo Decl., Ex. C.)

II.  THE PARTIES' ARGUMENTS

Farmer raises two grounds for relief from unlawful confinement by the Department of the Army and the Bureau of Prisons. (Pet., ECF No. 1, ¶13.) First, he contends Respondent's "nonacceptance that the parole revocation process reinstated the remainder of the petitioner's military sentence, which expired prior to the completion of his state sentence, violates" the Constitution. (Id., Ground One.)

Second, Farmer asserts he was not given jail credit, "for all the time in confinement towards service of his 'Old Law' sentence" in violation of the Constitution. (Id., Ground Two.) For relief, he seeks immediate release from custody. (Pet., ECF No. 1, ¶15.)

Respondent opposes habeas relief. (Answer, ECF No. 4.) Respondent contends Farmer's Pennsylvania conviction and sentence "interrupted" his military sentence, and his military sentence did not begin to run again until he was returned to military control for the purpose of completing his military sentence. (Id. at 5-6.) Respondent asserts that "[w]hat Petitioner mistakes for his time spent in confinement prior to his parole is actually credit for time spent in confinement prior to his court-martial." (Answer, ECF No. 4 at 7, n. 2, citing United States v. Allen, 17 M.J. 126 (C.M.A. 1984)).

Further, Respondent contends Farmer's sentence was correctly calculated, noting that "the maximum release date on a military sentence to confinement is '[t]he day preceding the date determined by adding the full term of the sentence to the beginning date of the sentence.'" (Id. at 7, quoting AR 633-30, ¶2c.) The unexpired term of the sentence to be served by the parole violator is "the actual number of days difference between the date of release on parole and the maximum expiration date of his sentence." (Id., citing AR 633-20, ¶2h.)

Additionally, Respondent asserts "[p]arole violators will not be credited with good conduct time or extra good time which was earned prior to the date of their release on parole," and furthermore, "abatement time reduces the maximum release date,"

and "inoperative time extends the maximum release date on an actual day basis." (Id. at 7, quoting AR 633-30, ¶¶ 2h(2), 14a, 5b.))

In reply, Farmer contends that a 1969 presidential executive order "that promulgates the MCM [Manual for Courts-Martial] concerning Execution of Courts-Martial Sentences (confinement and effective date of confinement) supersedes AR 633-30." (Reply, ECF No. 5 at 6.) According to Farmer, the MCM, 1969, para. 97c provides that his court-martial sentence "runs continuous until the period of confinement expires," and none of the exceptions in the MCM applies to his sentence. (Id.)

Farmer also argues that his "court-martial sentence while confined in the state had force/effect and was operative, because service of his sentence was continuous on an annual basis for clemency consideration . . ." (Id. at 8-9.) Furthermore, if the Petitioner's sentence was interrupted by "inoperative time," there shouldn't have been any contact between the Army and Petitioner concerning clemency consideration while serving his state sentence." (Id. at 9.)

Next, Farmer contends that his parole was revoked when the Board made a parole revocation determination concerning the detainer. (Id. at 10.) Thus, "if parole was revoked at that stage, the remainder of the parolee's original … sentence, reinstated by the parole revocation would run concurrently with the subsequent

sentence from the time of execution of the warrant." (Id., quoting Moody v. Daggett, 429 U.S. 78, 83-84 (1976)).

Even if the Board had not made a parole revocation determination at that stage "the original sentence [would] remain in the status it occupied at the time of the asserted parole violation." (Id. at 11, quoting Moody, 429 U.S. at 84.)

Finally, Farmer contends he must be awarded credit for his time in custody under the "Old Law." (Id. at 13.) He bases this claim on DoD Instruction 1325.4 (October 7, 1968), cited in United States v. Allen, 17 M.J. 126, 127 (1984)). (Id. at 12-13.) Farmer also quotes United States v. Tardif. 55 M.J. 670, 671 (2001), which states:

> In interpreting the DoD directive [1325.4 (October 7, 1968))] with this portion of 18 U.S.C. § 3568, the Court of Military Appeals in *Allen* decided that, although Congress exempted the military from sentence computation provisions in 18 U.S.C. § 3568, the Secretary of Defense in the DoD directive had voluntarily adopted those provisions. Thus, our higher Court determined that military prisoners must be allowed credit toward the service of their sentence for any "days spent in custody in connection with offense or acts for which sentence was imposed."

(Reply, at 13.)

Farmer further argues that "military prisoners who have been transferred into federal custody are subject to all of the federal laws and regulations governing any other prisoner, including

7

federal parole provisions." (<u>Id.</u> at 13, citing <u>Artis v. United</u>
<u>States</u>, 166 F.Supp.2d 126 (D.N.J. 2001) (citing <u>Hirsch v. Secretary</u>
<u>of the Army</u>, 172 F.3d 878 (10th Cir. 1999) (unpublished)). Farmer
argues that the Army and the BOP "did not adhere to the Department
of Justice's computation procedures." (<u>Id.</u>)

III. DISCUSSION

    A.    <u>Imprisonment for Crime Committed while on Parole</u>

"Unless a parole violator can be required to serve some time
in prison in addition to that imposed for an offence committed
while on parole, he not only escapes punishment for the unexpired
portion of his original sentence, but the disciplinary power of
the [Parole] Board will be practically nullified." <u>Zerbst v.</u>
<u>Kidwell</u>, 304 U.S. 359, 363 (1938). Thus, the Supreme Court held:

> When respondent committed a federal crime
> while on parole, for which he was arrested,
> convicted, sentenced, and imprisoned, not only
> was his parole violated, but service of his
> original sentence was interrupted and
> suspended. Thereafter, his imprisonment was
> attributable to his second sentence only, and
> his rights and status as to his first sentence
> were 'analogous to those of an escaped
> convict.' Not only had he-by his own conduct-
> forfeited the privileges granted him by
> parole, but, since he was no longer in either
> actual or constructive custody under his first
> sentence, service under the second sentence
> cannot be credited to the first without doing
> violence to the plain intent and purpose of
> the statutes providing for a parole system.

<u>Id.</u> at 361.

The respondents in <u>Zerbst</u> were not military parole violators, however, the same reasoning applies in the context of a military parole violator subsequently serving a civilian sentence. Thus, AR 633.30, ¶5b provides:[2]

> *Inoperative.* Inoperative time consists of any period during which a prisoner is not credited with serving his sentence. Inoperative time will include the period … While absent from confinement on a parole which proper authority has suspended and later revoked …

Additionally, 633.30, ¶4b provides in pertinent part:

> A sentence to confinement adjudged by a court-martial will not be served concurrently with any other sentence to confinement adjudged by a court-martial or a civil court.

Farmer was paroled on August 15, 1980. (Escobedo Decl., ¶9.b.) He was arrested by civilian authorities on December 15, 1981, and his parole was suspended. (Jan. 27, 1983 Letter, Escobedo Decl., Ex. J.) He was sentenced in civilian court on January 24, 1983, and released from state custody on December 16, 2013. Thus, pursuant to AR 633.30, ¶¶4, 5, Farmer did not start serving his military sentence again until he was returned, in December 2013, to the control of military authorities to serve his military sentence. (Escobedo Decl., ¶9e.)

---

[2] Citations are to the army regulations in effect when Farmer was court-martialed in 1977, AR 633-30 (effective Nov. 6, 1964), attached as Exhibit A to the Declaration of Adam Escobedo. (ECF No. 4-2 at 4-64.)

Farmer contends the MCM, 1969, para. 97c indicates that his court-martial sentence "runs continuous until the period of confinement expires," and none of the exceptions in the MCM applies to his sentence. (Id.) Farmer is wrong. Paragraph 97c of the 1969 MCM provides, in pertinent part:

> c. Interruptions of execution of a sentence.
>
> A sentence to confinement, hard labor without confinement, restriction to limits, or deprivation of privileges is continuous until the term expires, with certain exceptions. These exceptions include the following:
>
> When delivery under Article 14 is made to any civil authority of a person undergoing sentence of a court martial, the delivery, if followed by conviction in a civil tribunal, interrupts the execution of the sentence of the court-martial, and the offender after having answered to the civil authorities for his offense shall, upon the request of competent military authority, be returned to military custody for the completion of his sentence (Art. 14(b)).
>
> . . .
>
> Periods during which a sentence to confinement is suspended or deferred shall be excluded in computing the service of the term of confinement (Art. 57(b)).

Manual for courts martial 1969 available at https://www.loc.gov/rr/frd/Military_Law/CM-manuals.html

Next, Farmer contends that because he was considered for clemency under military law while serving his state sentence, he was serving his military sentence concurrently. For authority, he

cites AR 190-47 and Department of Defense Instruction 1325.4 ("DoD") [effective 1968], noting that clemency consideration is authorized within eight months after the sentence began to run and annually thereafter. The fact that clemency consideration is authorized within a prescribed time after the military sentence begins to run does not dictate when Farmer's sentence was operative for purposes of sentence calculation. Although Farmer contends clemency consideration is inconsistent with "inoperative" time, inoperative has a special definition in the Army Regulations.

Specifically, "inoperative time consists of any period during which a prisoner is not credited with serving his sentence. Inoperative time will include the period … while absent from confinement on a parole which proper authority has suspended and later revoked … [and] while absent after delivery to civil authorities, if subsequently convicted by a civil tribunal…" AR 633-30, ¶5b. Thus, according to Army Regulation, Farmer's military sentence was inoperative while he was on parole, which was subsequently suspended and revoked upon his arrest and conviction by civil authorities.

Finally, Farmer contends that when the Army Board made a parole revocation determination and issued the detainer, his military sentence began to run concurrently with his civilian sentence. Farmer quotes Moody v. Daggett, "[i]f parole was revoked at that stage, the remainder of the parolee's original sentence,

reinstated by the parole revocation, would run concurrently with the subsequent sentence from the time of execution of the warrant." 429 U.S. 78, 83-84 (1976).

The Supreme Court in Moody held that a federal parolee imprisoned for a crime committed while on parole was not constitutionally entitled to a prompt parole revocation hearing at the time a parole violator warrant was issued and lodged with the institution of his confinement. 429 U.S. at 89. The Court described three options the U.S. Parole Board had "for disposing of its parole violator warrant," and the option cited by Farmer, which would cause the sentences to run concurrently, was to "execute the warrant immediately and take the parolee into custody." This did not happen in Farmer's case, instead, the Army revoked his parole and placed a detainer on Farmer without taking him into Army custody until his civilian sentence was completed. For all of the reasons discussed above, Farmer served his military and civilian sentences consecutively, consistent with federal law and military law.

B.    Sentencing Credit

Farmer contends that federal law governs computation of his sentence because he is incarcerated in a federal prison. He relies on cases holding that Congress, in enacting 10 U.S.C. § 858(a), intended that "military prisoners who have been transferred into federal custody are subject to all of the federal laws and

regulations governing any other prisoner, including federal parole provisions." Artis v. United States, 166 F.Supp.2d 126, 130 (quoting Hirsch v. Secretary of Army, 1999 WL 110549 (10th Cir. 1999)); United States v. Allen, 17 M.J. 126 (1984) (quoting DoD Instruction 1325.4 (October 7, 1968)); United States v. Tardif, 55 M.J. 670, 671 (2001) (discussing history of DoD Directive 1325.4); O'Callahan v. Attorney General, 230 F.Supp. 766, 767 (D. Mass. 1964), aff'd 338 F.2d 989 (1st Cir. 1964) (holding that pursuant to 10 U.S.C. 858(a), military prisoner in federal penal institution is subject to the federal parole system.)

10 U.S.C. § 858(a) (effective 1956 to January 5, 2006) provides:

> (a) Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal, whether or not the sentence includes discharge or dismissal, and whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, Territory, District of Columbia, or place in which the institution is situated.

Thus, Farmer contends the Army miscalculated his sentence by using Army regulations. Farmer did not, however, describe how his sentence calculation would differ under federal statutes and regulations.

Respondent calculated Farmer's sentence under AR 633-30, and did not address Farmer's contention that federal law rather than military law governed calculation of his sentence. Before ruling on this issue, the Court will seek supplemental briefing from Respondent. Respondent should address whether the phrase "same discipline and treatment" in 10 U.S.C. 858(a) means that federal law governs the calculation of Farmer's sentence after he was transferred to FCI Fairton.

IV. CONCLUSION

While the Court rejects Farmer's contention that his military sentence and civilian sentence ran concurrently, Farmer has cited legal authority in his reply brief for the proposition that federal law rather than military law governs calculation of his sentence after he was designated to a federal correctional institution to serve his military sentence. Therefore, in the accompanying order filed herewith, the Court will administratively terminate this action for thirty days for Respondent to file a supplemental

brief.[3] Upon the expiration of the 30-day period, the Court will reopen this proceeding and address the issue of whether Farmer's sentence calculation must be guided by federal statutes and regulations rather than military law.

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**


Dated: January 31, 2018

---

[3] If Respondent relies on former versions of Army regulations or Department of Defense Directives in its supplemental brief, Respondent shall attach copies of such as exhibits to the brief.